AO 106 (Rev. 04/10)  Application for a Search Warrant

FILED
RICHARD W. NAGEL
CLERK OF COURT

2018 OCT -4  AM 10: 48

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

AUSA Jessica Kim

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

Information associated with the cellular telephone
assigned call number 614-679-0788, that is stored at
premises controlled by Sprint

)
)
)
)
)
)

Case No.  **2:18 mj 753**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Southern_____ District of _____Ohio_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B and/or attached Affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 242 | Deprivation of rights under color of law |
| 18 U.S.C. 1951 | Hobbs Act extortion |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Robert D. Bogner, Task Force Officer, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  10-4-18

_____
*Judge's signature*

City and state:  Columbus, Ohio

Hon. Chelsey M. Vascura, U.S. Magistrate Judge
*Printed name and title*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br><br>INFORMATION ASSOCIATED WITH THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER **614-679-0788,** WITH INTERNATIONAL MOBILE SUBSCRIBER IDENTITY / ELECTRONIC SERIAL NUMBER **355989088596379,** THAT IS STORED AT PREMISES CONTROLLED BY **Sprint** | Case No. **2 : 18 mj 7 5 3**<br><br><u>Filed Under Seal</u> |

## <u>AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT</u>

I, Robert D. Bogner, being first duly sworn, hereby depose and state as follows:

## <u>INTRODUCTION AND AGENT BACKGROUND</u>

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number **614-670-0788,** with International Mobile Subscriber Identity/Electronic Serial Number **355989088596379** ("the SUBJECT PHONE"), that is stored at premises controlled by **Sprint**, a wireless telephone service provider headquartered at **6480 Sprint Parkway, Overland Park, Kansas 66251**. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require **Sprint** to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2.      I am an Inspector with the Ohio Auditor of State (AOS), where I have worked since February 2015. As an AOS Inspector, I am responsible for conducting criminal investigations involving theft, theft in office, public corruption, and other violations of law. Since February 2017, I have been deputized as a Task Force Officer with the Federal Bureau of Investigation (FBI), Columbus Resident Agency for the Southern District of Ohio, Eastern Division. I am currently assigned to the Public Corruption Squad. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2510(7), in that I am an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516.

3.      Prior to working as an AOS Inspector, I was a Special Agent with the Internal Revenue Service Criminal Investigation (IRS-CI) for 28 years. During that time, I investigated violations of the Internal Revenue laws and related offenses and was involved in numerous investigations involving violations of the United States Code. I have provided financial investigative expertise and assistance to various federal and local agencies, including the FBI, Drug Enforcement Administration (DEA), Bureau of Alcohol, Tobacco, and Firearms (ATF), and the Columbus Division of Police Narcotics Bureau.

4.      During my tenure as a Task Force Officer with the FBI, I have been assigned to work on various types of investigations, including public corruption, financial crimes, violent crimes, narcotics offenses, and money laundering. I have experience in the execution of search warrants and the debriefing of defendants, witnesses, informants, and other persons who have knowledge of various types of illegal activities. I have experience in the use of sophisticated investigative techniques to include electronic surveillance, GPS tracking devices, telephone tracking, and wiretaps.

5.     I, along with other agents and officers from the FBI, the Columbus Division of Police (CPD), the Ohio Bureau of Criminal Investigation (BCI), and the Ohio Auditor of State (AOS), have been investigating corruption in the Columbus Division of Police Department's Vice Unit involving CPD Vice Unit Detective Andrew K. Mitchell.  Over the course of this investigation, I have become familiar with the organization and structure of the CPD Vice Unit, as well as the nature and scope of the CPD Vice Unit's duties.

6.     The facts set forth below are based upon my own observations and experience with this investigation, as well as investigative reports and information provided to me by other federal and state law enforcement officers.  This affidavit is being submitted for the limited purpose of demonstrating probable cause for the requested warrant.  For that reason, I have not included each and every fact known to me concerning this investigation.

## PROBABLE CAUSE

7.     Based on my training and experience, as well as information obtained from (i) interviews with sources of information and other witnesses; (ii) investigative reports and arrest records; (iii) federal and state law enforcement officers; (iv) public database searches; and (v) the ongoing investigation of the CPD Vice Unit in this district, there is probable cause to believe that violations of 18 U.S.C. § 242 (deprivation of rights under color of law) and 18 U.S.C. § 1951 (Hobbs Act extortion) have been committed by CPD Vice Unit Detective Andrew K. MITCHELL.  There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, and fruits of these crimes as further described in Attachment B.

**Background of Target**

8.      Andrew K. MITCHELL has been a CPD officer since 1987.  During his tenure as a police officer with CPD, MITCHELL has held a number of investigative assignments, including serving as a detective in the Homicide Section (from March 2012 to May 2015) and the Vice Unit.  MITCHELL is currently assigned as a detective in the Vice Unit, and has been in this assignment since March 12, 2017.  During at least 2002, 2004, and 2005, MITCHELL was sworn in as a Deputy Sheriff with the Franklin County Sheriff's Office.

9.      As secondary employment, MITCHELL owns and manages numerous rental properties, the duties of which include maintenance and bookkeeping.  Since the 1990s, Mitchell has owned at least 40 properties in the Central Ohio area, which he operates as apartments for rent.

**Operational Background of CPD Vice Unit**

10.      The CPD Vice Unit is charged with enforcing, among other things, prostitution-related offenses.  Many of these offenses are misdemeanor violations under the Ohio Revised Code.  Because of the nature of the offenses, and the types of crimes being investigated, CPD Vice Unit detectives are given a broad amount of latitude while performing their duties, including working alone in their respective on-duty vehicles.

11.      Your Affiant is aware of the following CPD procedure for prostitution-related offenses: Once a CPD Vice Unit detective decides to take an enforcement action (*e.g.*, picking up a suspected prostitute for potential arrest), the CPD Vice Unit detective is supposed to radio for his/her partner or another backup officer, as well as begin audio recording within the vehicle.  If the CPD Vice Unit detective determines that the elements are met for the offense of prostitution, the policy is to detain and transport the subject to a common location with other Vice Unit

4

officers for the processing of paperwork. This location may be a parking lot or a fixed structure. If there are no outstanding warrants for the subject's arrest, the subject is given a summons and then released. If there are outstanding warrants for the subject's arrest, arrangements are made for the subject to be transported to a local correctional facility.

## Criminal Investigation Involving Witness 1

12.     On or about September 6, 2018, investigators received information from individuals overseeing the Franklin County Municipal Court's Changing Actions to Change Habits (CATCH) program indicating that serious crimes were being committed by a CPD officer.

13.     On or about September 7, 2018, investigators interviewed Witness 1, a CATCH court participant who was willing to speak to law enforcement to report a sexual assault. Witness 1 disclosed she had been a prostitute in the past and was currently in the CATCH court program.

14.     While working as a prostitute in the late summer to early fall of 2017, Witness 1 voluntarily entered a vehicle with the intent to engage in a sex act in exchange for money. Witness 1 described the vehicle as a Jeep-like, medium-sized SUV, similar to a Lincoln Navigator, with leather interior (color unknown) and a grab handle in the back. After Witness 1 and the man operating the vehicle negotiated a price for sex, the man pulled out a law enforcement badge, identified himself as a Vice Officer, asked if she was a cop, and then asked if she had active warrants for her arrest. Witness 1 recalled that the man asked for her name, date of birth, and then ran her for active warrants using one of his two cell phones. Witness 1 also recalled that the man was wearing black or blue basketball shorts with a gray or white line down the sides and a matching shirt. The man, who was light-skinned African-American, drove to a

5

small park off of Briggs Road in Columbus (believed by your Affiant to be Lindbergh Park) and told Witness 1 that if she did not want to go to jail, she was going to have sex with him. Witness 1 agreed to have sex with the man because she did not want to go to jail, knowing that she had active warrants and was in possession of needles and a crack pipe.

15.     Witness 1 then got into the back seat of the vehicle, followed by the man. When told to reach behind her, Witness 1 complied, thinking that the man wanted her to grab his penis. The man, however, placed one handcuff on her wrist and then fastened the other handcuff to the grab handle over the passenger side rear door, at which point the man pulled down Witness 1's pants and began having vaginal sex with her. During vaginal sex, the man bit Witness 1's back, pulled her hair really hard, and was generally very rough with her. When he was finished, the man drove Witness 1 to a drug house to the area of Wayne Avenue and Mound Street where he allowed her to exit the vehicle. Initially, Witness 1 did not think the man who sexually assaulted her was actually a police officer. After the assault, however, Witness 1 spoke to other prostitutes in the drug house who warned her about the "light-skinned black man."

16.     A search of the Ohio Law Enforcement Gateway (OHLEG) database reveals that a black 2015 Lincoln Navigator, VIN #5LMJJ2JT1FEJ01610, Ohio license plate number GLX6189, is registered to MITCHELL's wife, Tanya Mclymont Mitchell, at 6249 Howard Road Sunbury, Ohio 43074. This vehicle has significant similarities to the vehicle described by Witness 1 used in the late summer/early fall of 2017 sexual assault.

17.     After the assault, Witness 1 was on the street working as a prostitute when she had an interaction with another prostitute, Witness 2. As a car drove past them, Witness 2 pointed to the car and warned Witness 1 not to enter the vehicle because the driver was a CPD Vice Unit Detective named "Andy Mitchell." Witness 2 told Witness 1 that "Detective

Mitchell" might take you to jail or make you have sex with him instead of being arrested. Witness 2 said she knew the officer's name because he had written her a summons for Soliciting. (Your Affiant is aware that CPD records and the Franklin County Correctional Center management system indicate that MITCHELL issued a summons to Witness 2 on a specific date, which is documented by a numbered CPD report.)

18.     In or around June or July of 2018, Witness 1 was working as a prostitute when she voluntarily entered a vehicle with the intent of exchanging a sex act for money. Upon entering the vehicle, Witness 1 realized the driver was the same man that sexually assaulted her in the fall of 2017 and the person that Witness 2 had identified as CPD Vice Unit Detective Andrew MITCHELL. Witness 1 told investigators that MITCHELL was not driving the same vehicle as the day of the first assault. She described the vehicle as a black, 4-door, "nicer car" with a gray-black leather interior, a nice stereo system, and slightly tinted windows.

19.     MITCHELL asked Witness 1 if she had any active warrants, to which she responded "yes." He also asked her if she had any drugs, to which she responded "yes." When Witness 1 tried to open the door to jump out, MITCHELL grabbed her hair to prevent her from leaving the vehicle and said he was taking her to jail. Witness 1 knew the arrest procedure and knew something was wrong because he did not call for a police officer.

20.     MITCHELL drove them to a park near Interstate 71 and Greenlawn Avenue (believed by your Affiant to be Berliner Park), where he parked and asked Witness 1 if she was going to make this easy or hard. MITCHELL pulled Witness 1's hair, turned her around in the front passenger seat, placed a handcuff on her wrist, fastened the other handcuff to the grab handle above the passenger side door, and then forced his penis into her anus "hard." During the

7

assault, MITCHELL turned up the car stereo and placed his hand over Witness 1's mouth when she began screaming.

21.     Witness 1 told investigators that as MITCHELL was penetrating her anus, he pushed her chest against the back of the passenger side front seat and forced her against the headrest, while placing his other hand on the headrest to brace himself, such that she could see MITCHELL's hand.  Witness 1 noted that MITCHELL had swollen or rather large knuckles. Witness 1 also recalled that MITCHELL had an impression or indentation on his finger as though he had removed a ring that was on his finger for a period of time.  She also remembered a black bag that was on the floor behind the driver's seat, which MITCHELL began to reach into prior to the sexual assault.  She further recalled the seat material not being fabric but, rather, leather or something smooth, as she remembered "sticking" to them.  She recalled seeing two cell phones that were sandwiched together in the center console cup holder of the vehicle.  (Your Affiant knows that MITCHELL was issued a CPD cell phone (assigned call number 614-359-2897) and also had a personal cell phone (**assigned call number 614-679-0788**) during this timeframe.)

22.     When MITCHELL was finished, he unlocked the handcuffs using a pen-style handcuff key.  Witness 1 told investigators that her pants were off while the attack occurred, and when MITCHELL had finished, he pulled up his pants and shoved her out of the vehicle, leaving her in the public park without pants.  Witness 1 stated that MITCHELL took her pants with him. She described her pants as black leggings made of a stretchy material with a design on the legs. Witness 1 also remembered that MITCHELL was wearing a T-shirt and what she described as pants or shorts with pockets on the side (i.e., cargo pants/shorts) and smelled of expensive

cologne. She recalled that MITCHELL was wearing a baseball cap that was black and white in color and had a bird "like an eagle" or something similar.

23. On or about September 11, 2018, Witness 1 identified CPD Officer Andrew MITCHELL from a photo array as the person who sexually assaulted her on two occasions as described above.

24. CPD payroll records reveal that MITCHELL's duty hours were 9:00am – 5:00pm with Saturday and Sunday as his days off. Witness 1 indicated that the June/July 2018 sexual assault occurred near dusk.

25. A search of the Ohio Law Enforcement Gateway (OHLEG) database further reveals that MITCHELL owns a dark gray 2013 Cadillac XTS, VIN #2G61P5S32D9107621, Ohio license plate number EPJ9719 (purchased on May 18, 2015), registered to him at 6249 Howard Road Sunbury, Ohio 43074. This vehicle has significant similarities (i.e., 4-door, darker, "nicer car" with slightly tinted windows) to the vehicle described by Witness 1 used in the June/July 2018 sexual assault.

26. On or about September 24, 2018, Witness 1 was shown an image of a 2013 Cadillac XTS by investigators. Witness 1 affirmed that the image depicted the vehicle that she had been in when she was sexually assaulted by MITCHELL in June/July 2018. Witness 1 became visibly upset and began to cry after viewing the image of the vehicle.

## Criminal Investigation Involving Witness 3

27. Previously, in the summer of 2018, the CPD Vice Unit and the New Salem Baptist Church Anti-Human Trafficking Ministry were collaborating on a project to address street prostitution in the North Linden area of Columbus, Ohio. During this project, on or about July 18, 2018, Witness 3 was arrested by another CPD Vice Unit detective and charged with

soliciting. At the time of the arrest, Witness 3 provided the arresting officer with a false identity of her cousin, "Witness 6". Subsequently, the arresting officer processed an arrest information report and a misdemeanor summons utilizing the false information provided by Witness 3, which ordered "Witness 6" in Franklin County Municipal Court on July 27, 2018 at 9:00am.

28.     While Witness 3's arrest was being processed, a church volunteer witnessed MITCHELL siting in a chair and talking with Witness 3. Once Witness 3 was free to leave, the church volunteer informed Witness 3 of the social services New Salem Baptist Church Anti-Human Trafficking Ministry offered to women charged with prostitution offenses. During the conversation, the church volunteer asked if "Witness 6" was her real name and she responded no, and revealed her real name. Witness 3 told the church volunteer that she had only been out on the street a couple of years and that the African-American who was sitting next to her inside the church was one of her first tricks. According to the church volunteer, MITCHELL was the only African-American officer in the room.

29.     On or about August 15, 2018, the CPD Vice Unit conducted another street prostitution enforcement operation in collaboration with the New Salem Baptist Church. During the operation, Witness 3 was again arrested and charged with loitering to engage in solicitation by another CPD Vice Unit detective. The arresting officer brought Witness 3 to the New Salem Baptist Church for arrest processing. During the processing, Witness 3 told arresting officers that she had been having a sexual relationship with a CPD officer named Andy Mitchell.

30.     As a result of the allegation described above, Witness 3 was interviewed by CPD internal affairs sergeants and supervisory management. Approximately 4–5 years ago, Witness 3 met MITCHELL through her cousin, Witness 6, who rented an apartment from MITCHELL at 1994 or 1995 Denune Avenue, and later on Oakland Park. At the time, Witness 3 was in need of

an apartment and began renting 1993 Denune from MITCHELL for approximately 6–7 months. (Your Affiant knows that MITCHELL has owned 1975 – 1999 Denune Avenue since May 16, 2000, and 1934 – 1940 Oakland Park Avenue from May 4, 1999 until it was sold on April 4, 2017.)

31.     Witness 3 told investigators that she began having sex for money when she began abusing prescription pills. MITCHELL would take Witness 3 to his apartment on Oakland Park that he called his "home away from home," where he would have vaginal sex with her, without a condom, and pay her $40.00 each time. After sex, MITCHELL would take Witness 3 to her apartment or a drug house to purchase pills. MITCHELL knew that Witness 3 used drugs, but she never did drugs in front of him. When Witness 3 was in physical need of pills to feed her drug habit, MITCHELL would drive her to a dope house to get pills before having sex. When MITCHELL picked up Witness 3, he would always be driving his pickup truck or newer black Cadillac.

32.     Witness 3 further told investigators that she knows that MITCHELL has rented properties to at least two other prostitutes (Witness 4 and Witness 5), who were having sex with MITCHELL for money.

33.     Witness 3 also told investigators that, while she was in custody at the Franklin County Correctional Center, a fellow inmate, Witness 5, approached her and stated that MITCHELL had called her and said that Witness 3 was "snitching" on him. As described above, the fellow inmate, Witness 5, was also a tenant of one of MITCHELL's properties.

34.     A search of the Franklin County Auditor and Recorders Office websites revealed that MITCHELL has purchased and/or sold over 40 rental properties since the 1990s. The Franklin County Auditor's website shows the rental contact information as being "Andrew K.

11

Mitchell, 6429 Howard Road, Sunbury, Ohio 43074," MITCHELL's primary residence, with a telephone number of **614-679-0788** (the SUBJECT PHONE).

## Eviction Notices

35.     This investigation has identified several prostitutes who engaged in sex acts for money with MITCHELL and/or were tenants in MITCHELL's rental properties.  A search of Franklin County Municipal Court records revealed the following eviction notices were filed by MITCHELL, who used an address of "6429 Howard Road, Sunbury, Ohio 43074," MITCHELL'S primary residence:

| DATE | EVICTION DEFENDANT | PROPERTY ADDRESS |
|---|---|---|
| 07/01/2014 | Witness 3 | 1999 Denune Avenue, #B |
| 10/13/2016 | Witness 6 | 1938 Oakland Park Avenue, Apt. B |
| 12/22/2016 | Witness 4 | 1938 Oakland Park Avenue, Apt. D |
| 12/08/2017 | Witness 4 | 1975 Denune Avenue |

## Social Media-Related Investigation

36.     During the course of this investigation, investigators have learned of at least two women who posted on social media that they had rented properties from MITCHELL, and that he had propositioned them for sex in exchange for rent.

37.     Evidence obtained during this investigation has revealed that MITCHELL is connected with Witness 3, as well as Witness 5 and Witness 6 (discussed above), and other potential witnesses on Facebook (i.e., Facebook friends with).  Your Affiant knows that individuals often access and communicate on Facebook via their cellular phones.

### Additional Ongoing Investigation

38.     As of on or about October 3, 2018, investigators are aware of approximately twelve additional women who have reported information regarding alleged misconduct by MITCHELL.

39.     Your Affiant knows, based on a pen register and trap and trace device that was judicially authorized by this Court on September 21, 2018, that the **assigned cellular telephone number 614-679-0788 is linked to a cellular phone IMEI #355989088596379, ESN #089506023208754743, serviced by Sprint**.

40.     In my training and experience, I have learned that **Sprint** is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records."  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

41.     Based on my training and experience, I know that **Sprint** can collect cell-site data about the locations(s) of the SUBJECT PHONE.  I also know that wireless providers such as

13

**Sprint** typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes. On September 20, 2018, a preservation request was submitted to Sprint for cellular telephone number **614-679-0788**, the SUBJECT PHONE. On September 25, 2018, Sprint submitted a letter confirming receipt of the preservation request and Sprint was preserving voicemail, IP Connection logs, including cell site records, call detail records, including cell site records, subscriber information, including payment information and PCMD that were found relative to cellular telephone number **614-679-0788**, the SUBJECT PHONE.

42.    Based on my training and experience, I know that wireless providers such as **Sprint** typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as **Sprint** typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

43.    Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

14

44.     I further request that the Court direct **Sprint** to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.  Because the warrant will be served on **Sprint,** who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

45.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

Robert D. Bogner
Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to before me on October _____4_____, 2018

Honorable Chelsey M. Vascura
UNITED STATES MAGISTRATE JUDGE

15

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

This warrant applies to records and information associated with the cellular telephone assigned call number **614-670-0788**, with International Mobile Subscriber Identity **#355989088596379** and Electronic Serial Number **#089506023208754743** ("the Account"), that are stored at premises controlled by **Sprint** ("the Provider"), headquartered at 6480 Sprint Parkway, Overland Park, Kansas 66251.

# ATTACHMENT B

## PARTICULAR THINGS TO BE SEIZED

### I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period **May 1, 2017 to the present**:

    a. The following information about the customers or subscribers of the Account:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Historical call detail records with cell site and sector information;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI"), and PCMD;

        vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

2

       viii.  Means and source of payment for such service (including any credit card or bank account number) and billing records.

   b.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

       i.  the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

       ii.  information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent.

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of 18 U.S.C. § 242 and 18 U.S.C. § 1951 involving **Andrew K. MITCHELL** during the period **May 1, 2017 to the present**.

3

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Sprint, and my title is

_____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Sprint. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Sprint, and they were made by Sprint as a regular practice; and

b. such records were generated by Sprint's electronic process or system that produces an accurate result, to wit:

1. the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Sprint in a manner to ensure that they are true duplicates of the original records; and

2. the process or system is regularly verified by Sprint, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____ _____

Date                                    Signature

2